UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA          :
                                  :
      v.                          :          CR 90-102 ML
                                  :          CR 91-074 ML
BABATUNDE KAREEM AGORO            :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court is a petition for writ of error coram nobis
filed by Defendant Babatunde Kareem Agoro ("Petitioner[1]" or
"Agoro").  See Notice of Motion for Post Conviction Relief for a
Writ of Error Coram Nobis Pursuant to 28 U.S.C. § 1651(a)
("Petition").  The Petition has been referred to me for preliminary
review, findings, and recommended disposition pursuant to 28 U.S.C.
§ 636(b)(1)(B).  A hearing was held on October 31, 2011.  After
reviewing the filings, listening to oral argument, and performing
independent research, I recommend that the Petition be denied.

## I.  Synopsis

As clarified by Agoro's counsel at the October 31, 2011,
hearing, the only relief which Agoro seeks by the instant Petition
is the vacation of his 1992 guilty plea to the charge of failing to

---

[1] The Court has previously denominated the filing addressed by this
Report and Recommendation as a "Petition" and, therefore, refers to
Defendant Babatunde Kareem Agoro as "Petitioner" or "Agoro."  See Order
Granting in Part Motion for Extension and Scheduling Hearing on Petition
(Docket ("Dkt.") #12) at 2 n.1; see also Trenkler v. United States, 536
F.3d 85, 94 (1st Cir. 2008)(stating that "coram nobis proceedings are best
seen as hybrids–quasi-civil and quasi-criminal").

appear for sentencing in violation of 18 U.S.C. § 3146(a).[2]  Agoro

contends that he is entitled to relief based on the holding in

Padilla v. Kentucky, ___ U.S. ___, 130 S.Ct. 1473, 1483, 1486

(2010), that a failure by defense counsel to inform a criminal

defendant that a guilty plea would carry a risk of deportation may

constitute ineffective assistance of counsel, see Matos-Santana v.

Holder, ___ F.3d ___, 2011 WL 517695, at *2 (1st Cir. Nov. 2, 2011)

---

[2] The Court sought clarification of the relief Agoro is seeking
because in his multiple pro se filings, see Section III, Travel, infra
at 7-10, Agoro makes some arguments that pertain to his November 26,
1991, guilty plea to one count of credit card fraud in CR 90-102 ML.
Agoro's counsel, however, confirmed that the only relief which is sought
by the instant Petition is vacation of his plea to the charge of failing
to appear for sentencing:

| | |
|---|---|
| THE COURT: | So the Defendant's contention is that defense counsel was ineffective by not telling the Defendant about what you say was a trend in the law turning towards increasing consequences for, um, aliens who are convicted of criminal offenses.  Is that correct? |
| MR. GELFUSO: | Yes. |
| .... | |
| THE COURT: | And the relief that you're seeking in this writ of error coram nobis is to vacate his guilty plea to the charge of failing to appear.  Is that correct? |
| MR. GELFUSO: | Yes. |
| THE COURT: | That's the sum total of the relief that's being sought.  Is that correct? |
| MR. GELFUSO: | Yes. |

Electronic Recording of 10/31/11 Hearing.

(noting Padilla holding).  Agoro contends that the holding in Padilla is retroactive and that applying it to his case requires that his plea be vacated because "he was not advised of the deportation consequences of his plea," Affirmation of 7/20/10 ("First Affirmation")[3] ¶ 11.  Agoro represents that deportation proceedings have been commenced against him based on this conviction and that it is the only basis upon which he can be deported.[4]  Id. ¶¶ 7-8.

Failing to appear for sentencing was not an aggravated felony when Agoro pled guilty in 1992.  However, as a result of changes in the law enacted in 1996, it became an aggravated felony and, critically for Agoro, the new law was made applicable to convictions obtained prior to the change.  Thus, Agoro's 1992 conviction makes him deportable.

The Court, however, concludes that Padilla is not retroactive. Even if Padilla is retroactive, Agoro's claim still fails because

---

[3] Agoro's First Affirmation was filed with the Petition on July 20, 2010.  See Dkt. in CR 91-74 ML.

[4] Agoro affirms that he:

is currently held in the Buffalo Federal Detention Facility pending the disposition of this motion, if the defendant's plea is vacated, the deportation proceedings will be abandoned as there is no other basis upon which defendant could lawfully be deported, if not, the deportation proceeding already begun will be concluded, and defendant will there after [be] deported on the basis of this conviction of failure to appear for sentencing 18 U.S.C. § 1346(a).

First Affirmation ¶ 7.

3

he cannot satisfy either of the two components required under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984), to vacate his guilty plea. Specifically, he cannot show that his counsel's performance was deficient, id. at 687, and he cannot show that he was prejudiced as a result, id.

## II. Facts

On November 26, 1990, Agoro pled guilty in this Court to one count of credit card fraud (18 U.S.C. § 1029(a)(2)). See Dkt. in CR 90-102.[5] Sentencing was scheduled for February 1, 1991, and he was released on $5,000.00 personal recognizance which had been set previously. See id. Agoro did not return to court on February 1, 1991, see id., and he was subsequently indicted for failing to appear for sentencing (18 U.S.C. § 3146(a)(1)). See Dkt. in CR 91-74.

On or about February 20, 1992, Agoro was apprehended in the Eastern District of New York. See Presentence Report in CR 91-74 ¶ 10. He was brought to the District of Rhode Island, arraigned on the new indictment on March 6, 1992, and ordered detained. See Dkt. in CR 91-74.

Agoro's sentencing on the charge of credit card fraud was conducted on April 1, 1992. See Dkt. in CR 90-102. The late District Judge Francis J. Boyle imposed a sentence of eight months

---

[5] As the letters following the indictment number have changed over the years (because they identify the judge to whom the case is assigned), the Court dispenses with them at this point to avoid confusion.

imprisonment, three years of supervised release, and a fine of $1,000.00. See id.

On April 13, 1992, Agoro pled guilty to the charge of failing to appear for sentencing. See Dkt. in CR 91-74. For this offense he was sentenced by District (now Senior) Judge Ronald R. Lagueux on June 18, 1992, to fifteen months imprisonment and three years of supervised release. See id. The sentence was made consecutive to the sentence which Agoro had received for credit card fraud. See id.

Defendant appealed his sentence, claiming that Judge Lagueux erred in refusing to grant a downward adjustment for acceptance of responsibility, in making an upward adjustment for obstruction of justice, and in failing to follow the guideline "grouping" rules that apply to multiple-count convictions. See United States v. Agoro, 996 F.2d 1288, 1291 (1st Cir. 1993). The Court of Appeals rejected the first two claims, id. at 1292, but found merit in the third claim, id. at 1291. It held that under the grouping rules Judge Lagueux could permissibly add only thirteen more months to the eight month sentence which Judge Boyle had imposed. Id. Accordingly, the case was remanded for resentencing. Id. at 1294. On August 4, 1993, Judge Lagueux sentenced Agoro to ten months imprisonment consecutive to the sentence which Judge Boyle had imposed in CR 90-102. See Dkt. in CR 91-74. A three year term of supervised release was also imposed. See id.

In 1992, when Agoro pled guilty to failing to appear, the offense was not classified as an aggravated felony. <u>See</u> 8 U.S.C. § 1101(a)(43) (1994). However, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), enacted on April 24, 1996, and the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), enacted on September 30, 1996, significantly broadened the categories of aggravated felonies to include failure to appear for sentencing. <u>Echendu v. United States</u>, Civil Action No. CV-02-1255 (DGT), 2003 WL 21653370, at *4 (E.D.N.Y. July 14, 2003)(noting this change); <u>United States v. El-Nobani</u>, 145 F.Supp.2d 906, 908 (N.D. Ohio 2001)(noting "dramatic changes in immigration law brought about by the [IIRIRA]"), <u>rev'd on other grounds</u>, 287 F.3d 417 (6th Cir. 2002). As a result of these changes in the law, the deportation of aggravated felons became automatic and non-discretionary. <u>Zhang v. United States</u>, 506 F.3d 162, 167 (2nd Cir. 2007); <u>see also</u> <u>INS v. St. Cyr</u>, 533 U.S. 289, 325, 121 S.Ct. 2271 (2001)(referring to deportation of aggravated felons as "certain"). Most significant for Agoro, in the IIRIRA Congress provided that the definition of "aggravated felony" under 8 U.S.C. § 1101(a)(43) "shall apply to actions taken on or after the date of the enactment of [IIRIRA], *regardless of when the conviction occurred*." <u>Echendu</u>, 2003 WL 21653370, at *4 (quoting IIRIRA § 322(c)). Thus, as a result of his 1992 conviction for failing to appear, Agoro is deportable as an aggravated felon. <u>Cf.</u> <u>id.</u> ("[B]ecause of his 1993

6

conviction [for failing to appear in violation of 18 U.S.C. 3146(a)(1)] Echendu is now deportable as an aggravated felon.").

On June 4, 2010, Agoro filed pro se motions to withdraw his guilty pleas and vacate his convictions in both cases. <u>See</u> Dkts.[6] The motions were denied by Chief Judge Mary M. Lisi in a June 17, 2010, order which stated in part:

> Defendant's motions to vacate his guilty pleas, sentence and conviction, presumably filed pursuant to 28 U.S.C. § 2255, are out of time. Both convictions became "final" more than 15 years before he filed the instant motions; thus, they are barred by the one-year statute of limitations, and, as such, they must be and they are hereby DENIED and DISMISSED. Having disposed of Defendant's motions to vacate, the Court finds no independent basis upon which to grant Defendant relief from the deportation order. Therefore, the "Emergency Motion of Deportation" is also DENIED.

Order of 6/17/10.

## III. Travel

Agoro, still proceeding pro se, filed the instant Petition on July 20, 2010. <u>See</u> Dkts. The Government filed its response on August 27, 2010. <u>See</u> Government's Response to Defendant's Motion for Writ of Coram Nobis ("Government's Response"). Thereafter, over the course of the next several months, Agoro filed several additional documents in support of the Petition. On September 14, 2010, he filed Defendant's Motion to Traverse the Government Motion

---

[6] "Dkts." refers to the dockets in CR 90-102 and CR 91-74.

for Writ of Error Coram Nobis ("Defendant's Traverse"). See Dkts.[7]
Two days later, on September 16th, he filed exhibits in support of
Defendant's Traverse. On October 19, 2010, Agoro filed a
supplement to Defendant's Traverse. See Supplement to Defendant's
Motion to Traverse the Government Motion for Writ of Error Coram
Nobis Petition Pursuant to Section 28 U.S.C. 1651(A) (sic) ("Supp.
to Defendant's Traverse"). On January 10, 2011, he filed an
Affirmation in Support of Babatunde Kareem Agoro Motion to Vacate
Conviction Pursuant to Coram Nobis Petition Section 1651 (A)
("Second Affirmation"). Slightly more than two weeks later, on
January 25th, Agoro filed Petitioner Motion to Supplement the
Records ("Petitioner's Motion to Supp."). On March 1, 2011, he
filed several documents which he identified as "clarifying the
Retroactive Applicability of Padilla v. Commonwealth of Kentucky,
130 S.Ct. 1473, 1485 (2010)."

Counsel for Agoro entered their appearances on April 27, 2011,
see Dkt., and filed a motion to extend time to prepare Petitioner's
case on May 4, 2011, see Motion for [] Extension of Time for
Attorney Preparation ("Defendant's Motion for Extension") (Dkt.
#3). The Government opposed the extension. See Government's
Response to Defendant's Motion for Extension of Time for Attorney
Preparation (Dkt. #4). However, the Court granted it and directed

---

[7] After September 14, 2010, all further docket entries for CR 91-74
were made in the docket for CR 90-102. Accordingly, hereafter "Dkt."
means the docket in CR 90-102.

Agoro's counsel to file a supplemental memorandum in support of the Petition by July 31, 2011, and for the Government to file a reply by August 31, 2011, see Order (Dkt. #5). Agoro's counsel met this deadline, filing their Supplemental Memorandum in Support of Defendant/Petitioner's Motion for Writ of Coram Nobis (Dkt. #7) ("Agoro's Supp. Mem.") on July 31, 2011. The Government did not, and on September 13, 2011, it filed a motion for an extension of time. See Government's Motion for an Extension of Time (Dkt. #10). Agoro filed an objection to the extension. See Objection to Government's Motion to Extend Time (Dkt. #11).

The Court conducted a chambers conference with counsel on September 22, 2011, regarding the motion for an extension and Defendant's objection to that motion. See Order Granting in Part Motion for Extension and Scheduling Hearing on Petition (Dkt. #12) ("Order of 9/22/11").

> After listening to counsel regarding the Motion and the Objection, the Court stated that it would extend the time for the Government to file its response to the Supplemental Memorandum in Support of Defendant/Petitioner's Motion for Writ of Coram Nobis (Dkt. #7) ("Defendant's Supplemental Memorandum") until October 21, 2011. The Court was satisfied that the Government's failure to file a response by the deadline established by Magistrate Judge Almond's Order (Dkt. #5) of May 23, 2011, was inadvertent and attributable to the retirement of the Assistant United States Attorney ("AUSA") previously assigned to these matters and their subsequent reassignment to a different AUSA. However, the Court, noting Defendant's objection, declined to grant the Government the full extension of time requested in the Motion.

Order of 9/22/11 1-2. In accordance with this ruling, the Court

ordered that the Government file its response to Agoro's Supp. Mem. by October 21, 2011, and scheduled a hearing on the Petition for October 31, 2011. See id. at 2. The Government beat this deadline by ten days, filing the Government's Response to Defendants [sic] Supplemental Memorandum in Support of Motion for Writ of Coram Nobis (Dkt. #13) ("Government's Supp. Response"). Following the hearing on October 31, 2011, the Court took the matter under advisement.

## IV. Law

### A. Writ of Coram Nobis

The writ of coram nobis, available under the All Writs Act, 28 U.S.C. § 1615(a), provides a method for collaterally attacking a criminal conviction when a defendant is not in custody and, thus, cannot proceed under 28 U.S.C. § 2255. Chaidez v. United States, 655 F.3d 684, 687 (7th Cir. 2011); see also Trenkler v. United States, 536 F.3d 85, 97-98 (1st Cir. 2008)(reversing grant of error coram nobis to federal prisoner in custody because petition fell within the scope of 28 U.S.C. § 2255 and, thus, was the exclusive means by which prisoner could challenge the validity of his conviction or sentence); id. at 97 ("the writ of error coram nobis[] is thus available only to fill whatever interstices exist in the post-conviction remedial scheme made available to federal prisoners by way of section 2555"). It "is an unusual legal animal that courts will use to set aside a criminal judgment of conviction only

10

'under circumstances compelling such action to achieve justice.'"
Hager v. United States, 993 F.2d 4, 5 (1st Cir. 1993)(quoting United
States v. Morgan, 346 U.S. 502, 511, 74 S.Ct. 247 (1954)).  Those
circumstances include an explanation of why the coram nobis
petitioner did not earlier seek relief from the judgment, a showing
that the petitioner continues to suffer significant collateral
consequences from the judgment, and a demonstration that an error
of "the most fundamental character," relevant to the plea decision,
occurred.  Hager, 993 F.2d at 5 (quoting Morgan, 346 U.S. at 512);
see also United States v. Sawyer, 239 F.3d 31, 38 (1st Cir. 2001)
("In deciding whether to grant the writ, courts have used a three-
part test: a petitioner must 1) explain her failure to seek relief
from judgment earlier, 2) demonstrate continuing collateral
consequences from the conviction, and 3) prove that the error is
fundamental to the validity of the judgment.").

### B.  Ineffective Assistance of Counsel

To establish that counsel's performance was
deficient, a defendant must show that it fell below an
objective standard of reasonableness under the
circumstances. [Strickland v. Washington, 466 U.S. 668,]
687-88, 104 S.Ct. 2052 [(1984)].  This is a highly
deferential review, making every effort to "eliminate the
distorting effects of hindsight."  Id. at 689, 104 S.Ct.
2052.  As the Supreme Court emphasized in Yarborough v.
Gentry, the "Sixth Amendment guarantees reasonable
competence, not perfect advocacy judged with the benefit
of hindsight."  540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d
1 (2003).  When examining counsel's conduct, the court
considers the facts of the particular case from counsel's
perspective at the time.  Strickland, 466 U.S. at 690,
104 S.Ct. 2052.  Counsel has "wide latitude in deciding
how best to represent a client," Gentry, 540 U.S. at 5-6,

11

> 124 S.Ct. 1, and benefits from a strong presumption that
> he or she rendered adequate assistance and exercised
> reasonable professional judgment in making all
> significant decisions. Strickland, 466 U.S. at 690, 104
> S.Ct. 2052.

Sleeper v. Spencer, 510 F.3d 32, 38-39 (1st Cir. 2007).

An ineffective assistance of counsel claim requires both deficient performance and resulting prejudice. Strickland v. Washington, 466 U.S. at 687. The Court also "must evaluate the challenged conduct from counsel's perspective at the time ... making every effort to eliminate the distorting effects of hindsight." Horton v. Allen, 370 F.3d 75, 86 (1st Cir. 2004) (quoting Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993)) (alteration in original). "[C]ounsel's performance is ineffective only if it was objectively unreasonable under prevailing professional norms." Id. at 81; see also Lynch v. Ficco, 438 F.3d 35, 49 (1st Cir. 2006)("[T]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.")(alteration in original). Finally, the Court must "start with the presumption that the challenged action was sound trial strategy." Horton v. Allen, 370 F.3d at 86 (citing Phoenix v. Matesanz, 233 F.3d 77, 82 (1st Cir. 2000)).

## V. Discussion

### A. Is Padilla Retroactive?

Three federal circuits have considered this question. The Seventh and Tenth Circuits have concluded that Padilla announced a

12

new rule of constitutional law that does not apply retroactively. Chaidez, 655 F.3d at 686 ("Padilla announced a new rule that does not fall within either of Teague's exceptions"[8]); United States v. Hong, ___ F.3d ___, 2011 WL 3805763, at *3 (10th Cir. Sept. 1, 2011)("we conclude Padilla is a new rule of constitutional law because it was not compelled by existing precedent at the time Hong's conviction became final").  The Third Circuit has reached the opposite conclusion.  United States v. Orocio, 645 F.3d 630, 641 (3rd Cir. 2011)("We therefore hold that, because Padilla followed directly from Strickland and long-established professional norms, it is an 'old rule' for Teague purposes and is retroactively

---

[8] In Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060 (1989), the Supreme Court held that, subject to two exceptions, a new rule of law will not be applied on collateral review to cases that became final prior to the announcement of the new rule.  489 U.S. at 310 (plurality opinion).  The First Circuit has explained the two exceptions:

    The first allows retroactive application of new rules that either (a) prohibit criminal punishment for certain types of primary conduct, or (b) forbid the imposition of certain categories of punishment for particular classes of defendants. ...

    The second ... allows retroactive application of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.  First, [i]nfringement of the rule must seriously diminish the likelihood of obtaining an accurate conviction.  Second, the new rule must itself alter the accepted understanding of the bedrock procedural elements essential to the integrity and fairness of a criminal proceeding.

Sepulveda v. United States, 330 F.3d 55, 59-60 (1st Cir. 2003)(third alteration in original)(internal quotation marks and citations omitted). The second exception is quite narrow, and since Teague the Supreme Court has rejected every attempt to fit a case within the exception.  United States v. Hong, ___ F.3d ___, 2011 WL 3805763, at 8 (10th Cir. 2011).

applicable on collateral review.").

The district courts have also divided on the question. See Richards v. United States, No. 11 CV 1341(HB), 2011 WL 3875335, at *3 n.1 (S.D.N.Y. Sept. 1, 2011)(noting that "[c]ourts to address the issue have reached different conclusions"); id. (citing cases); Jiminez v. Holder, Civil No. 10-cv-1528-JAH (NLS), 2011 WL 3667628, at *3 (S.D. Cal. Aug. 19, 2011)("There have been inconsistencies in the district courts as to whether Padilla created a new rule and whether the rule can be retroactively applied to cases on collateral review."); United States v. Dass, Criminal No. 05-140(3)(JRT/FLN), 2011 WL 2746181, at *3 (D. Minn. July 14, 2011) ("Courts considering the question of Padilla's retroactive application have reached conflicting results"); id. (citing cases); Compare United States v. Abraham, No. 8:09CR126, 2011 WL 3882290, at *2 (D. Neb. Sept. 1, 2011)(stating that "[t]he weight of authority appears to favor nonretroactivity," but "[a] few courts, however, have decided that Padilla is retroactive in a collateral review context"), with Marroquin v. United States, Civil Action No. M-10-156, 2011 WL 488985, at *2 (S.D. Tex. Feb. 4, 2011)(stating "a majority of courts have found that Padilla is simply the application of an old rule, concluding that Padilla's holding applies retroactively").

The Orocio court was "convinced that Padilla did not 'br[eak] new ground' in holding that counsel must inform a criminal

14

defendant of the immigration consequences of a guilty plea in order to be constitutionally adequate." _Orocio_, 645 F.3d at 638 (alteration in original). It is difficult to envision the First Circuit being similarly "convinced," _id._, given its prior holdings barring "any ineffective assistance claims based on an attorney's failure to advise a client of his plea's immigration consequences," _United States v. Gonzalez_, 202 F.3d 20, 28 (1st Cir. 2000); _see also_ _id._ at 25 ("[A]n attorney's failure to advise a client that deportation may result from a conviction does not constitute ineffective assistance of counsel.")(quoting _United States v. Yearwood_, 863 F.2d 6, 7 (4th Cir. 1988)); _id._ (stating "that as a 'collateral consequence' of conviction, deportation was 'legally irrelevant, even as to an outright guilty plea'")(quoting _United States v. Quin_, 836 F.2d 654, 655 (1st Cir. 1988)); _Nunez Cordero v. United States_, 533 F.2d 723, 726 (1st Cir. 1976)("While deportation may have a serious effect on a defendant's life, we are not disposed to treat deportation differently from all other collateral consequences of conviction.")(citations omitted). In light of these explicit statements, _Padilla_ certainly announced a new rule in terms of First Circuit law. Similar circumstances with respect to Eighth Circuit law caused the court in _United States v. Perez_, No. 8:02CR296, 2010 WL 4643033 (D. Neb. Nov. 9, 2010), to conclude that _Padilla_ should not be applied retroactively. _Id._ at *2 ("[T]his court is convinced that _Padilla_ created a 'new rule'

that should not apply retroactively because such rule was not dictated in prior Eighth Circuit precedent.").

While the answer to the retroactivity question is by no means clear, this Magistrate Judge finds the opinions by the Seventh Circuit in Chaidez, 685 F.3d 684, and the Tenth Circuit in Hong, 2011 WL 3805763, persuasive. The Tenth Circuit's explanation of why it declined to follow the Third Circuit's opinion in Orocio, 645 F.3d 630 is especially persuasive. See Hong, 2011 WL 3805763, at *8 ("Padilla is a new rule of constitutional law not because of what it applies——Strickland——but because of where it applies—— collateral immigration consequences of a plea bargain."); see also id. at *10 (disagreeing with Orocio and other cases which have cited dicta in the Padilla majority opinion suggestive of retroactivity); Chaidez, 655 F.3d at 690 ("Prior to Padilla, the lower federal courts, including at least nine Courts of Appeals, had uniformly held that the Sixth Amendment did not require counsel to provide advice concerning any collateral (as opposed to direct) consequences of a guilty plea."). In particular, this Magistrate Judge agrees with the Tenth Circuit that it is:

> unwise to imply retroactivity based on dicta——and abandon the Teague analysis entirely. The Teague framework exists to promote the finality of convictions by shielding them from collateral attacks mounted on new procedural rules of constitutional law. To imply retroactivity from an isolated phrase in a Supreme Court opinion would completely ignore this goal.

Hong, 2011 WL 3805763, at *10.

16

This Magistrate Judge also agrees with the Tenth Circuit's _Teague_ analysis of the _Padilla_ holding. _Hong_, 2011 WL 3805763, at *8 (finding that "[t]he rule in _Padilla_ is procedural, not substantive"); _id._ at *9 (concluding that "_Padilla_ did not announce a watershed rule of criminal procedure and does not fall within _Teague_'s second exception to the retroactivity bar"). Accordingly, I find that _Padilla_ is not retroactively applicable to cases on collateral review. Therefore, it does not apply to Agoro's 1992 guilty plea, and the instant Petition should be denied on that basis. I so recommend.

Nevertheless, this Court acknowledges that the answer to the retroactivity question is not free from doubt. For that reason, the Court will also address Petitioner's claim of ineffective assistance of counsel.

**B. Ineffective Assistance of Counsel**

**1. Was Counsel's Performance Deficient?**

Assuming the truth of Agoro's claim that he was "not advised of the deportation consequences of his plea," First Affirmation ¶ 11, this Court has little difficulty finding that Agoro's counsel was not ineffective in failing to advise him "that immigration law was undergoing ... major changes, and that a trend was developing toward categorical deportation ...." Agoro's Supp. Mem. at 8. Agoro's contention that "a trend was developing" is a creative attempt to circumvent the fact that at the time he pled guilty

there were no deportation consequences of his plea. Indeed, the Presentence Report, which was prepared after Agoro plead guilty, states that "he is not deportable at present." Presentence Report ¶ 60.

Reduced to its essence, Agoro's ineffective assistance of counsel claim is that his attorney failed to advise him in 1992 that, although he was not subject to deportation based on his guilty plea at that time, this could change in the future. Thus, Agoro contends that his attorney should have: (1) foreseen that the definition of an aggravated felony would be expanded to include the charge of failing to appear, (2) foreseen that the expanded definition would be made retroactive to include the conviction resulting from Agoro's 1992 guilty plea, and (3) advised Agoro of the probability, or at least the possibility, of these future events occurring. Agoro apparently further contends that Padilla requires that his attorney should have provided this information so that he could consider it in deciding whether to plead guilty.

The law, however, is clear that counsel cannot be ineffective for failing to forecast a change in the law. Luciano v. United States, C.A. No. 06-284 ML, 2007 WL 1656250, at *3 (D.R.I. June 6, 2007); Clark v. Moran, 749 F.Supp. 1186, 1201 (D.R.I. 1990) ("counsel not ineffective for failing 'to anticipate changes in the law'")(quoting United States v. Baynes, 687 F.2d 659, 668 n.11 (3rd Cir. 1982)); accord Toledo v. United States, 581 F.3d 678, 681 (8th

Cir. 2009)("Counsel is not accountable for unknown future changes in the law."); <u>Powell v. United States</u>, 430 F.3d 490, 491 (1st Cir. 2005)("the case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law")(quoting <u>Kornahrens v. Evatt</u>, 66 F.3d 1350, 1360 (4th Cir. 1995)); <u>United States v. Ardley</u>, 273 F.3d 991, 993 (11th Cir. 2001) ("we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel"); <u>Valenzuela v. United States</u>, 261 F.3d 694, 700 (7th Cir. 2001)(finding ineffective assistance of counsel argument "meritless because our cases provide that '[t]he Sixth Amendment does not require counsel to forecast changes or advances in the law'")(quoting <u>Lilly v. Gilmore</u>, 988 F.2d 783, 786 (7th Cir. 1993)).  To the extent that Agoro contends that <u>Padilla</u> requires an attorney to provide his client with predictions about future changes in immigration law based on an alleged "trend," this Court rejects such contention.  Agoro cites no case holding that the failure to anticipate a change in the law constitutes ineffective assistance of counsel, and the Court is aware of none.

Thus, I find that Agoro's claim that his attorney failed to advise him of the immigration consequences of his plea does not satisfy the first prong of <u>Strickland</u> which requires that Petitioner "show that counsel's performance was deficient."

Strickland, 466 U.S. at 687; see also id. at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, **viewed as of the time of counsel's conduct.** ... The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.")(bold added).

It bears emphasizing that this finding is based on the fact that there were no immigration consequences of the plea when it was entered. Padilla's counsel was found ineffective because she "could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute ...." Padilla, 130 S.Ct. at 1483; id. ("This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect.") Here, in contrast, if Agoro's counsel had consulted the relevant statutes, he would have determined that a guilty plea would not have rendered Agoro eligible for deportation.

To the extent that Agoro contends that his counsel should be found ineffective based on the statement in Padilla that "[i]t is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the Strickland

analysis,'" id. at 1484, the Court is not so persuaded.  This Court interprets "available advice" to mean information that could be obtained by consulting the relevant statutes at the time. "[A]vailable advice" does not extend to making predictions or forecasts about future changes in immigration law.  Thus, to the extent that Agoro contends that his attorney was ineffective because he did not advise him that a conviction for failing to appear "may carry a risk of adverse immigration consequences," id. at 1483, the Court is unpersuaded that the failure to provide such advice in 1992 when there were no immigration consequences was "outside the wide range of professionally competent assistance," id. at 1484.

### 2.  **Was Agoro Prejudiced?**

In order to satisfy the prejudice prong of the Strickland test "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366 (1985).  As the Padilla court explained, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain[9] would have

_____

[9] In Agoro's case, there was no plea bargain.  See Presentence Report ¶ 7 ("The guilty plea in this case was entered without any agreement between the government and the defendant as to what sentence will be recommended by the government.  The government has pledged, however, that its sentencing recommendation will take into account any cooperation that the defendant demonstrates to the government.").

been rational under the circumstances." Padilla, 130 S.Ct. at 1485. Thus, Agoro must convince this Court that if his attorney had told him that his guilty plea had no immigration consequences as of the date he entered it but that the law could change in the future and render him deportable, he would not have pled guilty and would have insisted on going to trial. The Court is not so convinced.

Agoro had no defense to the charge of failing to appear.[10] If he had gone to trial, it is a virtual certainty that he would have been convicted and lost any chance at receiving a two level reduction in offense level for acceptance of responsibility. This likely would have resulted in an even longer sentence of imprisonment.[11] Moreover, while Agoro's conviction at trial was a virtual certainty, an adverse change in immigration law was not, even if there was a "trend" in that direction. Given these

---

[10] At the April 1, 1992, sentencing hearing for credit card fraud, Agoro's counsel acknowledged that "the Defendant had fled." Transcript of 4/1/92 Hearing in CR 90-102 at 3. Agoro, in his "Acceptance of Responsibility" statement for CR 91-74, admitted that he knew he had to appear for sentencing on February 1, 1991, and that he did not do so. Presentence Report ¶ 10 ("At that time sentencing was set down for 2/1/91 which I did not attend on the date which to be sentenced. For this I am 'truly sorry.'").

[11] The fact that Judge Lagueux ultimately determined that Agoro should not receive credit for acceptance of responsibility, see Judgment in CR 91-74 at 5, does not diminish the validity of this point. While a defendant who pleads guilty is not guaranteed a two level reduction in offense level, his chances of receiving such a reduction are far greater than a defendant who goes to trial and imposes the burden of proving his guilt on the government. This fact weighs significantly in the calculus of deciding whether to plead guilty or go to trial.

circumstances, Agoro cannot show that he would rationally have gone to trial.

To the extent that Agoro may contend that he would not have gone to trial but would have instead negotiated a plea to a different charge which did not have potential immigration consequences, such argument is rejected. Agoro had zero bargaining power. Proving the charge of failing to appear would have required minimal effort by the government. Furthermore, Agoro would not have been able to advance any plausible reason why he should be allowed to plead guilty to a different charge other than his belief that there was a "trend" in the law which could make him deportable in the future. Lastly, Agoro would have no way of knowing which alternative charge would avoid deportation consequences since such charge, like the charge of failing to appear, could be added to the list of aggravated felonies in the future.

In sum, I find that Agoro is unable to satisfy the prejudice prong of <u>Strickland</u>.

### C. Coram Nobis Requirements

Given that Agoro's counsel was not ineffective, and even if he were ineffective, Agoro was not prejudiced, the Court finds it unnecessary to discuss the three requirements for issuance of a writ of coram nobis. By virtue of the findings which the Court has already made, it has been conclusively determined that Agoro cannot "prove that the error is fundamental to the validity of the

judgment," United States v. Sawyer, 239 F.3d at 36.

## VI.  Conclusion

Accordingly, for the reasons stated above, I recommend that the Petition be denied.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


*/s/  David L. Martin*
DAVID L. MARTIN
United States Magistrate Judge
November 16, 2011